UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES WILSON, | |
| Plaintiff, | No. 20 C 4604 |
| v. | Judge Thomas M. Durkin |
| BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT 508, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Charles Wilson alleged that his supervisor and employer, the City Colleges of Chicago, discriminated and retaliated against him based on his race and age.[1] The Court previously granted Defendants' motion to dismiss all of Wilson's claims except his retaliation claim under Title VII, which the City Colleges never moved to dismiss. The City Colleges now seek summary judgment on that claim. That motion is granted.

Title VII prohibits an employer from retaliating against an employee for opposing an unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a). "To prevail on a Title VII retaliation claim, the plaintiff must prove that (1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018).

---

[1] The City Colleges of Chicago is the more common name of defendant Board of Trustees of Community College District 508.

Wilson began working as a maintenance engineer for the City Colleges in 2015. He alleges he made many complaints about the circumstances of his employment to his supervisors and the Human Resources Department at the City Colleges. But he does not allege that any of those earlier complaints concerned discrimination prohibited by Title VII. Rather, the complaints generally concerned his assignments and work conditions. Because Title VII protects only complaints about "discrimination based on a protected characteristic," Wilson's complaints about his job conditions are not protected by Title VII. *See Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.").

Wilson alleges that he made what the Court assumes was a verbal complaint to the City Colleges EEO Officer in May 2019. But it was not until November 19, 2019 that Wilson filed a grievance with the City Colleges alleging racial discrimination. Four days later, he submitted a complaint to the EEO Office alleging discrimination. The Court assumes that this grievance and complaint is activity protected by Title VII.

Having produced evidence that he engaged in a protected activity, Wilson must also demonstrate that he suffered an adverse action as a result of that protected activity. For an adverse action to be actionable as retaliation under Title VII, it must have occurred *after* the plaintiff engaged in protected activity, or else it is impossible

to demonstrate causation. In this case, that means that only actions taken against Wilson after his May or November 2019 complaint can be actionable.

The primary problem with Wilson's claims is that he does not explain *when* many of the alleged adverse actions occurred. This is true for the following alleged adverse actions:

- "subjected him to intimidating, humiliating, and derogatory statements," *see* R. 76 at 2 (no date);

- "performing dangerous activities without proper equipment," *see* R. 76 at 2 (no date);

- "took away from [Wilson] the job that he was hired to do, making [Wilson] no longer responsible solely for Washburne but for all five . . . buildings," *see* R. 76 at 5 (no date);

- "giving [Wilson] additional work to do," *see* R. 33 ¶ 19 (no date);

- Wilson's supervisor "threatened to terminate him," *see* R. 76 at 3 (no date);

- Wilson's "locker was broken into, and his items disposed of," R. 76 at 3 (no date), R. 76 at 5 (no date);

- Wilson was disciplined "for not signing the diary or logbook," *see* R. 76 at 4 (no date), R. 76 at 7 (no date), R. 76 at 15 (no date); and,

- Wilson's supervisor disciplined him because Wilson "observed and took pictures of [the supervisor] and an unknown unauthorized person in the boiler room making adjustments to the equipment which generated a warning code on [Wilson's] phone," *see* R. 76 at 8 (no date).

The dates of these alleged incidents are not included in Wilson's complaint, R. 33; brief, R. 76; or statements of material facts, R. 77, R. 78, R. 91. The Court is not

3

required to search the record further. *See United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010) ("[I]t was not the district court's job to sift through the record and make [the plaintiff's] case for him."). Without dates, a reasonable jury could not find that these adverse actions were caused by Wilson's complaint of racial discrimination.

One of Wilson's allegations of an adverse action occurred prior to his complaint about discrimination in May or November 2019. He admits that he was denied access to the Engineers' jeep to get around campus prior to February 2019. *See* R. 77 ¶ 42. Because this action occurred prior to Wilson's EEO complaint, it cannot have been caused by his EEO complaint, and therefore cannot have been retaliatory.

Wilson also identifies dates for the following incidents that occurred after his complaint of racial discrimination, whether it occurred in May or November 2019. They are the following:

- "[B]etween 2019 and 2020," Wilson's supervisor told him "he was suspended for one day and that he shouldn't come to work the following day," but the Human Resources Department told Wilson that the supervisor "had no authority to issue a suspension, and that Plaintiff should ignore the suspension and come to work the following day," *see* R. 76 at 14-15;

- In December 2019, Wilson was required to relocate to a different building on the campus where Wilson admits "all of the other Engineers had workspace and lockers." *See* R. 77 ¶ 27. Wilson claims that this action "denied him appropriate workspace," *see* R. 76 at 2; and took away Wilson's "dedicated and assigned workspace" and "dedicated computer, and . . . phone line," *see* R. 76 at 4 (no date);

4

- In December 2019, Wilson's supervisor changed Wilson's shift. Wilson filed a grievance and was awarded a more favorable shift the next month, *see* R. 76 at 8-9;

- On January 10, 2020, [Wilson's] supervisor "issued a disciplinary write-up against [Wilson] for failing to properly paint [a] wall. Wilson complained to [Human Resources], who indicated the matter was not appropriate for a write-up, rather the wall simply needed to be repainted, *see* R. 76 at 9; and,

- Wilson alleges that on February 25, 2021, his supervisor disciplined him for: (i) supposedly making a false statement; (ii) loafing or not performing work during periods of time; (iii) failing to maintain equipment properly, and (iv) breaching two specific work rules, *see* R. 76 at 3-4, 13.

For these allegations, the problem is not timing, but the materiality of the allegations. "For Title VII retaliation purposes, a materially adverse action need not be one that affects the terms and conditions of employment, but it must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lewis*, 909 F.3d at 867-68. "Material" means "significant" and not "trivial." *Id.* In other words, the Supreme Court has explained, Title VII "does not set forth a general civility code for the American workplace." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). It is insufficient to allege or demonstrate an unwanted or unexpected negative experience at work. Rather, the retaliatory act must cause some "injury or harm." *See Burlington N.*, 548 U.S. at 67; *see also Poullard*, 829 F.3d at 856–57 (an employer's unfulfilled "threats of unspecified disciplinary action" did not constitute adverse actions).

5

Here, all but one of Wilson's allegations concern either unfulfilled threats or unspecified workplace disputes. Wilson alleges that his supervisor wished to suspend him, yet admits that the City Colleges Human Resource Department prevented this from happening. Wilson alleges that his supervisor gave him a less favorable shift, yet that decision was soon reversed. Wilson claims that his supervisor wrote him up for inadequately painting a wall, but Human Resources again stepped in to prevent the discipline. And Wilson vaguely alleges that his supervisor disciplined him for: (i) supposedly making a false statement; (ii) loafing or not performing work during periods of time; (iii) failing to maintain equipment properly, and (iv) breaching two specific work rules. Wilson's vague allegation of "discipline" is insufficient evidence for a reasonable jury to find that Wilson was subject to an adverse action. Moreover, discipline for failing to meet reasonable job-related expectations is not actionable. Wilson has not presented any evidence that he did not engage in these activities of which he was accused. Indeed, he has presented no specific evidence about these alleged incidents at all. Without such evidence, a reasonable jury could not find that he was subject to retaliation in violation of Title VII. *See Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018) (To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial.").

Under certain circumstances, the decision to relocate an employee's workstation could arguably be material. But here Wilson admits that this action was taken to make his working conditions equal to that of his fellow engineers. And

6

Wilson does not allege or present evidence that the relocation of his workstation had a materially negative effect on his working conditions. Without such evidence, a reasonable jury could not find that a reasonable employee would be dissuaded from engaging in the protected activity, and thus the relocation of Wilson's workstation cannot be retaliatory.

## Conclusion

Therefore, the City Colleges' motion for summary judgment [70] is granted.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: May 16, 2024